Brown v. Balde.

The judgment must be affirmed with costs.    Judgment affirmed.

---

BARBARA BROWN, Appellant, *v.* JOHN BALDE and others, Respondents.

(GENERAL TERM, FOURTH DEPARTMENT, NOVEMBER, 1870.)

In an action against a special guardian and his sureties, upon a bond given in proceedings for sale of infant's real estate, to recover moneys received by the guardian as such, the complaint alleged a balance adjudged and decreed against the defendant, on an accounting with respect to the same moneys, before a court of competent jurisdiction, and did not seek to open or impeach the decree; it also contained averments necessary to sustain it as a bill for an accounting, and prayed judgment for the sum found due in the former proceedings, or for an accounting, &c.—*Held*, that the action could not be maintained for an accounting, and was properly treated as merely an action at law upon the bond.

Before an action can be maintained, at law, against the sureties, upon a bond given upon the appointment of a special guardian in proceedings for the sale of infant's real estate under the statute (2 R. S., 194, § 172), the guardian must be called to account and ordered to pay over, by a court of competent jurisdiction; but the sureties are not necessary parties to the proceedings in which the order for payment is made.

A County Court which appoints a special guardian in such proceedings (2 R. S., 194, &c.), has, as a necessary incident to the power of appointment, the power to compel the guardian to discharge his duty; *e. g.*, to call him to account for moneys received on the sale.

Whether a guardian called upon to render an account is "an opposing party" within the restriction of section 31 of the Code, which declares "the County Court always open for the transaction of any business for which no notice is required to be given to an opposing party."   *Quere.*

When, however, that court has jurisdiction of the subject-matter, it may transact business for which notice "is required to be given to an opposing party" at other times than at regularly appointed terms, if the party entitled to notice waives his privilege, as by formal consent or voluntary appearance without objection.

Where the special guardian in such proceedings was cited to an accounting before the county judge, by whom he had been appointed, appeared, rendered an account, and submitted to a decree for a balance found due, —*Held*, that he waived the right to object that the proceedings were *coram non judice*. *Held*, also, the guardian having failed to pay over

such balance, as required by the decree, that his sureties were liable for the same in an action on his bond.

A general denial to a complaint which pleads the records of a court with a *prout patet per recordum*, puts in issue nothing more than the plea of *nul tiel record*.

A party seeking to impeach the record, in such case, must give notice to the plaintiff by setting forth the facts specially.

THIS was a motion for a new trial after a nonsuit at the circuit, and the exceptions ordered to be heard at the General Term in the first instance.

The action was brought against the defendant, Balde, as the obligor, and Snell and Petrie, as sureties, in a certain bond given in 1852 to the plaintiff, then an infant, in proceedings before the Herkimer county judge, for the sale of the plaintiff's real estate.

The complaint set forth the proceedings before the county judge and the appointment of the defendant, Balde, as special guardian to the plaintiff therein, by order entered in the usual form, and the giving of the bond pursuant to the order with Snell and Petrie as sureties therein, conditioned for the faithful performance by Balde of the trust reposed in him as guardian, and for his investing, paying and accounting for all moneys and securities that should be received by him according to the order of any court having authority to give directions in the premises, and for his observing the orders of the court in relation to the trust; that the bond was duly approved and authority given to the defendant, Balde, as special guardian, to contract for a sale and conveyance of the plaintiff's real estate upon terms as specified in the order. It also averred a sale by Balde as special guardian and the receipt by him of several thousand dollars in money thereon, and that he had neglected and refused to account for the same.

The complaint also alleged that the plaintiff, in June, 1866, had instituted proceedings in the said County Court for an accounting by the defendant, Balde, as special guardian, and that it then appeared that said Balde, as such special guardian, was indebted to the plaintiff for and on account of the moneys so collected and received by him for the plaintiff, in the sum

Brown *v.* Balde.

of $402.47; that afterward an order or decree was made by
such court, in such accounting, in all things confirming the
accounting, and ordering and adjudging, among other things,
that the defendant, Balde, as special guardian, was indebted
to the plaintiff in the sum of $402.47, and ordering and
directing the same to be immediately paid to the plaintiff, and
in default thereof that the defendant, Balde, and his sureties
be prosecuted on the bond; and that the plaintiff referred to
such proceedings for accounting, and the papers therein, and
to such order or decree on file and entered in the clerk's office
of Herkimer county, as part of the complaint.   It also averred
a neglect and refusal of the defendant, Balde, to account for
or pay to the plaintiff the sum mentioned, though requested,
&c., and that the whole amount thereof with interest was due
and owing from Balde to the plaintiff, and demanded judg-
ment for the sum of $402.47 with interest, or that the defend-
ant, Balde, account to the plaintiff for all moneys and securities,
and interest collected and received by him, as special guardian
for the plaintiff in respect to the real estate sold by him, and
that the plaintiff might have judgment against the defendants
for such sum as should be found due and owing from said
Balde to the plaintiff upon such accounting, and for other and
further relief, &c.

The defendants, Snell and Petrie, answered denying the
complaint and each and every allegation thereof.

The testimony established the allegations of the complaint,
in respect to the proceedings for sale of the plaintiff's real
estate, the appointment of Balde as special guardian, the execu-
tion of the bond by him with his sureties, the sale of the
lands involved in the proceedings, &c.; proceedings for an
accounting by said Balde before the Herkimer county judge
in which copies of the citation to Balde was delivered to Snell
& Petrie were also shown, in the manner stated in detail in
the opinion of the court.

The court granted a nonsuit, upon the ground that the
special guardian had not been called to an account and had
not rendered an account in any court, and that no court had

made any order in reference to payment of any moneys by him which he had not obeyed, and that he was not in default, and that the action was prematurely brought.

*Francis Kernan,* for the plaintiff.

*Earl and Smith,* for the defendants.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

TALCOTT, J.    This is clearly an action at law to recover an adjudicated balance upon the bond of the defendant, Balde, as guardian of the plaintiff.    While it is true that the complaint contains substantially the allegations necessary to sustain it as a bill for an account in equity against the guardian, to which the sureties, though not necessary, would be proper parties (*Cuddeback* v. *Keat and al.,* 5 Paige, 92), yet it contains additional allegations showing that the action cannot be maintained for an account, namely, the averment that an accounting has already been had before a court of competent juisdiction, a balance found due, adjudicated and decreed to be paid over to the plaintiff, and does not seek to open or impeach that decree.    Accordingly, the action was, by the parties, treated as an action at law upon the bond, and brought down to the circuit for trial before a jury.    The plaintiff was nonsuited, and the only question we can now consider is, whether the nonsuit was right, treating the action as an action at law.    We have already had occasion, at least twice, to decide that an action at law cannot, on the trial, be converted into an action in equity, and *vice versa.**

It is not one of those amendments which may be made on the trial, or by conforming the pleadings to the proofs.    Actions at law are to be tried by a jury unless such trial is expressly waived, or the action is referred ; actions in equity are to be tried by the court, except so far as distinct questions of fact to be ascertained beforehand by the court, may be submitted to a jury.    The plaintiff was nonsuited upon the ground that

---

* See Ante, p. 143, 147.

Brown *v.* Balde.

there had been no accounting of the guardian, or balance ordered to be paid, by and before any court of competent jurisdiction, for the reason that it appeared on the trial, as was claimed, that the proceedings averred to have taken place in the County Court of Herkimer county, in fact took place not at any regular or adjourned term of the County Court, but before the county judge at chambers, and was thus *coram non judice.* The circuit judge was undoubtedly correct in holding that, before an action can be maintained *at law* against the sureties on such a bond, the guardian must have been called to account and ordered to pay over by a court of competent jurisdiction. It is true the chancellor, in *Cudderback* v. *Keat and al., supra*, expresses the opinion that sureties on such a bond may be sued at law on the bond without any previous accounting; but the chancellor was not then sitting in a court of law, nor was this point involved in the case before him, and he had evidently overlooked the previous case of *Stillwell* v. *Mills* (19 J. R., 304). This doctrine of the chancellor was reviewed and overruled by the Supreme Court in the subsequent case of *Salisbury* v. *Van Housen* (3 Hill, 77). The condition of the bond required to be given in such cases is according to the statute for the paying over, investing and accounting for all moneys that shall be received by such guardian, according to the order of any court having authority to give directions in the premises."

It is obvious that no default of the condition of the bond can occur till after the order of some court "having authority to give directions in the premises."

It is equally plain that disobedience of an order made by any such court, which is binding upon the guardian is a breach of the condition of the bond, and that the sureties are not at all necessary parties to the proceedings in which such order is made and can take no exceptions thereto except such as might have been taken by the guardian himself. (*Baygot* v. *Boulger*, 2 Duer, 160; *People* v. *Laws*, 3 Abbott, Pr. R., 450.)

We have only to inquire, then, whether the proceedings alleged to have taken place in the County Court could be

impeached by Balde, the guardian, for want of jurisdiction. If not, they are conclusive against the other defendants. In other words the order to pay over was the order of "a court having authority to give directions in the premises."

It is assumed by the counsel on both sides, that the County Court, being the court by which the sale of the infant's real estate was ordered, and in which proceedings Balde was appointed special guardian, had authority to call him to account. This is doubtless correct; for, though the power conferred upon the County Court is, by its terms, confined to "the sale, mortgage or other disposition of the real property, situated within the county of an infant," yet it being necessary in such proceedings to appoint a guardian, no doubt the court has, as a necessary incident, the power to compel him to discharge his duty.

The proceedings appear to have been as follows: 1. The petition of the plaintiff, and others of the heirs of Mark Folts, deceased, who were minors at the time of the sale of the real estate, setting forth the facts, and alleging that Balde has refused to account to the petitioners for the moneys which had come to his hands as special guardian in the proceedings, claiming that the petitioners had, at the time of presenting their petition, obtained their majority, and praying that a citation issue to call Balde to account as such special guardian Thereupon the county judge issued a citation, citing Balde to appear before the "County Court of the county of Herkimer," at the office of the county judge, &c. The citation was duly served on Balde. On the return day Balde did not appear, and the matter was adjourned. On the adjourned day Balde appeared, but not then being prepared to render his account, the matter was further adjourned till September 5, 1866; at which day Balde appeared, and his accounts as special guardian were examined and found to be satisfactory; and thereupon Balde executed, acknowledged and delivered to the county judge a stipulation, whereby, after reciting that he had been duly cited to render his accounts as such special guardian, and had appeared in pursuance of such citation;

and that having examined the accounts, he found due to the
heirs respectively certain specified sums, and thereby also
authorized the county judge to enter a decree in his office,
which should be "final and conclusive in the matter of the
accounting." And thereupon a formal order or decree was
entered, purporting to be "at a County Court held in and
for the county of Herkimer," reciting the previous proceed-
ings and stipulation confirming the accounting which had
been had, adjudging that Balde, as such special guardian, was
indebted to the heirs respectively in the amounts' stated, and
ordering the same to be paid immediately, or that the guard-
ian and his sureties be prosecuted.

On the cross-examination of one of the witnesses for the
plaintiff, he testified that "none of these hearings spoken of"
(by which I suppose is intended the return day of the cita-
tion, and the several adjourned days, including the day on
which the final decree was entered) was at a regular or
adjourned term of the County Court.

The fact, then, is, that it is claimed that, although it is
alleged in the complaint that these proceedings took place in
the County Court (and they so purport on their face), yet that
they, in truth, took place before the county judge at a time
when he was not holding any regular and previously appointed
term of the court.

The statute (Code, § 31) provides that so many terms as
the county judge may designate for that purpose, in a notice
to be published in the State paper at least four weeks before
any such term, may be held for the trial of issues of law, and
hearing and decision of motions, and other proceedings, at
which no jury shall be required to attend. The same section
also declares, that the County Court is always open for the
transaction of any business for which no notice is required to
be given to an opposing party. It may be doubted whether
a guardian called upon to render an account is "an opposing
party" within the meaning of the restriction; but assuming
him to be such, I think the restriction is for the benefit of
those who may be entitled to, and require notice. The

County Court has jurisdiction of the subject-matter. It is always open, and may at any time transact such business as it has jurisdiction and power to transact, unless notice is required to be given to an opposing party; in which case, and, as I apprehend, for the convenience of the party entitled to such notice, it is to be transacted at a previously appointed term. This restriction is to protect suitors from being at unexpected and unseasonable times compelled to appear before the court, which, nevertheless, is always open. The business was, as appears upon the face of the proceedings, transacted in the " County Court;" but whether at such a time as the court, according to the appointment of terms it had made, could regularly transact it, was a question of regularity, the objection to which might be waived by the formal consent or voluntary appearance of the parties without objection. This is not like the case of business attempted to be transacted out of court by a person who is a judge, but who cannot sit as a court except at stated times and places. Here was, as appears on the face of the proceedings, a County Court. It was regularly and lawfully open, and in session; and the only question is, whether this particular description of business could be regularly transacted at that time, because the party proceeded against was not only entitled to the usual notice, but to the additional convenience and opportunity for preparation afforded by a previously appointed term. I am, therefore, of the opinion that the irregularity, if any, was waived by the voluntary appearance, and consent of Balde to have the matter heard by the court at that time, though not a regular previously appointed term, and that being so, the decree and order of the court was the order " of a court having authority to give directions in the premises," which Balde was bound to obey.

If he did not do so there was a breach of the condition of the bond, and in the absence of fraud and collusion, which are not charged, the sureties are liable.

The nonsuit was erroneous upon another ground. The complaint pleads the proceedings in the County Court as

records of that court, and with a *prout patet per recordum.* The answer is merely a general denial; a general denial in such a case cannot be more extensive as to the record than *nul tiel record.* But there is such a record of the County Court as was alleged in the complaint. *Nul tiel record* puts in issue nothing but the existence of the record, and is disproved by the production of the record. (Saunders Pl. & Ev., 755, 274; Tidd., 804.)

Where a party seeks to attack the record of a court of record, which imports verity, by showing that the court had no authority, in fact, to make such record, he cannot do it by denying that there is such a record. Assuming that the record can be attacked in this action for this cause, the party seeking to impeach it must give notice to the other party of his intended impeachment of the record, by setting forth the facts specially. (*Starbuck* v. *Murray,* 5 Wend., 148.)

There was no such issue in the case as that upon which the plaintiff was nonsuited. A new trial must be granted, costs to abide the event.

JOHNSON, J., concurred. MULLIN, P. J., dissented.